## VAN GORDON v. UNITED STATES.
### No. 5670.

United States District Court
W. D. Missouri, W. D.

June 5, 1950.

Kenneth C. West, Kansas City, Mo., for plaintiff.

Lyman Field, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

By stipulation of the parties it is agreed that the plaintiff received injuries because of the negligence of the defendant. Such injuries were sustained early in the morning of March 16, 1949. The plaintiff was standing on the safety island on Main Street, East of the Union Station in Kansas City, Missouri, when a truck operated by the defendant approached with its end or tailgate loosened from a properly closed position and extending out in such way as to strike the plaintiff on the head and left arm and side with such force as to knock her to the pavement. The truck was traveling at approximately 9 miles per hour.

No question is raised but that the truck was being negligently operated by permitting the endgate or tailgate either to swing out or to extend out above the safety island where plaintiff was awaiting transportation by street car. Moreover, no issue was made but that the plaintiff suffered spinal injury as well as injuries to her head which had caused, and was still causing headaches, at the time of the trial. At the trial she complained of headaches though the accident occurred more than one year previously. She also complained of pain in her back due to an admitted compression fracture of the second lumbar vertebra.

The only question for decision, therefore, is the extent of plaintiff's injuries and the amount of damages that should be awarded her.

An examining physician who testified for the government said that the plaintiff has a 10% permanent disability. This opinion was not based upon her claimed headaches but upon an examination of the compression fracture of the second lumbar

vertebra. Plaintiff's physicians thought her disability varied from 15% to 25%.

At the time plaintiff sustained her injuries she was placed in a prone position on a flat surface by her physician and required to remain in such position for a period of two months. It was in evidence that she continued to lie on such flat surface from the date of the injury March 16, 1949 to May 16, 1949. During all of that time she suffered with headaches and pains in her back. An orthopedic surgeon attached or fitted a brace as a support and required her to wear it until December 9, 1949, a period of approximately 8 months. She has continued, however, to wear such brace, even up until the time of the trial. All of the physicians, including her own, indicated that this was a mistake and that it should have been removed in the interest of muscle tone. She excused herself by saying that she was unable to buy a support (which would have cost $25) in lieu of the brace she was wearing. At the time of the accident she was employed but she has not been employed since. It was the opinion of the physicians, however, that she was employable and could do some work.

She suffers pain if she sits too long (that is more than 30 minutes) in one position, and it is for this reason, among others, that she has not attempted to work. She has not been able to do her own housework since she suffered the injuries.

■ Since the trial counsel on both sides have commendably furnished helpful and carefully prepared briefs of the facts as well as the law relating to compensation for damages under similar circumstances or in parallel cases. The books disclose great variations in awards made both by juries and courts at different times. As said in 25 C.J.S., Damages, § 93, p. 641: "There is no standard by which physical pain and suffering may be measured and compensated for in money. It can only be said that an award of damages therefor should be estimated in a fair and reasonable manner, and not by any sentimental or fanciful standard, and should constitute a reasonable compensation to plaintiff on the facts disclosed by the evidence. The

jury are entitled to consider the length of plaintiff's suffering, the nature of the injury, the age, health, habits, and pursuits of plaintiff.

The above is a fair text and finds support in the decisions. Another rule from a text found in 25 C.J.S., Damages, § 71, pages 560, 561, is worthy of quotation: "While the fundamental rule of the law is to award compensation, yet rules for ascertaining the amount of compensation to be awarded are formed with reference to the just rights of both parties, and the standard fixed for estimating damages ought to be determined, not only by what might be right for plaintiff to receive in order to afford just compensation, but also by what is just to compel defendant to pay."

The above text is followed by another apposite textual statement: "It has also been held that the impaired purchasing power of the dollar, when such is the case, should be considered in assessing damages." The foregoing serve as excellent postulates or premises in attempting to adjudge an award properly and sufficiently compensatory.

■ 1. There are no extenuating circumstances in so far as the defendant is concerned. The operator of its truck was clearly and concededly negligent. The plaintiff was hit with great force under circumstances that she could not foresee nor avoid. The wonder is that the plaintiff escaped death rather than suffered painful and partially disabling permanent injuries.

Though her headaches were only subjectively disclosed so far as the physicians were concerned, yet the force of the blow and the nature of it would tend to confirm her statement that she has suffered from headaches since and is still so suffering. The fact that she had a serious spinal fracture was clearly established by all of the physicians both for the plaintiff and for the government. The fracture of the second lumbar vertebra has healed yet she still suffers pain and, as indicated by the government's physician, she has at least 10% permanent diability. It must be concluded, therefore, that she not only recieved a heavy blow to her head and body but that

she has suffered not only continuing pain but partial permanent disability.

2. An examination of the cases shows a wide variation in awards of damages for similar or nearly similar cases. Counsel for defendant has called attention to the case of Pfiffner v. Kroger Grocery & Baking Co., Mo.App., 140 S.W.2d 79. The opinion in that case was rendered on May 21, 1940, approximately ten years before this case was tried. On page 86 of 140 S. W.2d is a discussion by Judge Bennick, the author of the opinion, on the propriety of the award of damages made by the jury in the sum of $4500. Judge Bennick said: "Plaintiff's chief injury consisted of a compression fracture of the body of the first lumbar vertebra, producing a permanent condition in his back, which it was shown was not only reasonably likely to cause pain in the future, but was of such a nature as to prevent plaintiff, a laboring man, from ever being able to engage in any kind of labor that would require stooping, bending or lifting."

This was precisely comparable to the spinal injuries in the instant case. In upholding the verdict, the court said that it should "defer to the judgment of the jury and the trial judge." The court did not have before it the fact, as in this case, that the plaintiff had suffered and was suffering from continuing headaches as the result of a concededly severe blow to the head.

When the verdict in the Pfiffner case was returned the purchasing power of the dollar was much greater than it is now. Reasonably, therefore, for the spinal injury alone the plaintiff at this time should have a substantial increase over the amount approved by the St. Louis Court of Appeals. In addition, the plaintiff should have substantial damages for the injury to her head causing headaches extending over a period of more than a year and with a proper inference that such headaches will continue in the future.

3. Able counsel for the defendant makes the point that the evidence did not support the claim that the plaintiff had expended over $500 for medical attention. Her own physician, Dr. Gist, had been in almost constant attendance since her injury and for several months she was confined at her son-in-law's hotel and was practically helpless. In addition to Dr. Gist, Dr. White, an orthopedic surgeon, treated her extensively and later she was examined by Dr. Fitzgerald, another orthopedic surgeon, not for treatment, but for the purpose of giving the court at the trial the benefit of his conclusions in an examination made of plaintiff. Undoubtedly these expenses, whether actually charged against plaintiff or not, were expenses incurred as a result of her injuries. Plaintiff is 54 years old, and an award of damages in the sum of $10,000 would seem to be proper and same will be made.

The parties have substantially agreed on the correctness of proposed findings of fact and statement of conclusions of law submitted by plaintiff's counsel. These have been examined and appear accurate and will be given as requested.